RENDERED: JULY 10, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0518-MR

JESSE J. MITCHELL                                                              APPELLANT

v.
APPEAL FROM WARREN CIRCUIT COURT
HONORABLE J. B. HINES, JUDGE
ACTION NO. 24-CR-00355

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND MOYNAHAN, JUDGES.

CETRULO, JUDGE: Jesse Mitchell appeals his conviction and sentence of five years' imprisonment for possession of a handgun by a convicted felon following a jury trial and final sentencing in Warren Circuit Court. After our review, we affirm.

## FACTS & BACKGROUND

In October 2022, Jesse and his wife, Tanayia, lived in Warren County, Kentucky, with their seven-year-old son and five-year-old daughter. The Mitchells

were expecting the arrival of their third child very soon as Tanayia was 34 weeks pregnant. On October 20, their daughter relayed allegations of abuse and domestic violence to personnel at her elementary school. In particular, the daughter described an incident where Jesse fired a gun at Tanayia, but the bullet missed her and instead struck a wall in the home.[1]

School officials contacted law enforcement, and several police officers reported to the school. Given the nature of the allegations, the officers notified their supervisor of the need for a detective trained in conducting child forensic interviews and requested assistance. Detective Ryan Dillon with the Bowling Green City Police Department responded shortly thereafter.

The end of the school day was approaching, and Tanayia along with other parents had arrived to pick up their children. The officers spoke with Tanayia, who admitted to owning a gun but disputed her daughter's allegations. Tanayia called Jesse to come to the school. For approximately the next hour, Detective Dillon interviewed the Mitchells and their two children. At some point, Jesse acknowledged the presence of a handgun in the home but stated that it belonged to Tanayia. However, once the officers confirmed Jesse's status as a convicted felon, they arrested him for unlawful possession of a firearm.

---

[1] The Mitchells' daughter also drew a picture. Trial testimony from the investigating detective revealed that the daughter's picture was just "scribble" and that he could not discern anything from it.

While Jesse was taken into custody, Detective Dillon and two other officers accompanied Tanayia back to the family's residence where Tanayia consented to a search for the handgun and gunshot evidence. Upon entering the home, Tanayia went to the kitchen and tried to retrieve the handgun from an overhead cabinet. When she could not reach it, Detective Dillon recovered a Bryco .38-caliber handgun from the cabinet's top shelf. Another officer removed the magazine, secured the weapon, and ran the serial number through dispatch, ultimately confirming its registration to Tanayia. The officers did not discover any evidence of bullet holes in the house.

Jesse was eventually indicted in April 2024 for one count of possession of a handgun by a convicted felon under KRS[2] 527.040, and his jury trial commenced on February 26, 2025. Following opening statements by counsel, the trial court read the parties' stipulation that Jesse was a convicted felon into the record. The Commonwealth presented the testimonies of the evidence custodian, the three responding officers on October 20, 2022, Detective Dillon, and Tanayia.

At trial, the Commonwealth called Tanayia as one of its first few witnesses. During direct examination, Tanayia recalled telling Detective Dillon of the handgun's location on the top shelf of a kitchen cabinet. She also remembered another officer asking who put the gun there, and her reply that Jesse did.

---

[2] Kentucky Revised Statute.

On cross examination, Tanayia told a different story. Tanayia stated that she, not Jesse, put the gun in the kitchen cabinet. She described how she was able to reach the gun's location in the overhead cabinet by opening the bottom cabinet, stepping on the ledge, and boosting herself up. She explained that she did not do so when the police were at her home on October 20 because she "did not want to do their job for them."

Tanayia testified that she normally kept the gun in her friend's storage unit, which she could not access, much less Jesse, without her friend's permission and security code. Tanayia stated she only had the gun in her possession on October 20 because she planned to take a trip with just her two children to Nashville later that day. She claimed that she retrieved the gun from her friend's storage unit around noon and then called Jesse to tell him the gun was in the house and not to come home until after she and the children left.

Tanayia admitted that she did not disclose any of those details to law enforcement on October 20. When asked why, she testified that she felt like no one believed her and did not want to go to jail herself. She said that she was 34 weeks pregnant and "just shut down," telling the police what she thought they wanted to hear.

Following Tanayia's testimony, the Commonwealth called Deputy Norman Simpson. Deputy Simpson was one of the officers who responded to the

school on October 20, and he accompanied Detective Dillon and Tanayia to the Mitchells' residence to search for evidence. Upon arriving at the house, Deputy Simpson activated his body camera, which recorded the handgun's discovery and the ensuing discussion with Tanayia. In the clip played for the jury, Tanayia could be seen opening the kitchen cabinet and struggling to get the handgun. When she was unable to reach it, Detective Dillon walked over to Tanayia and, as he was taller, easily retrieved the gun from the top shelf.

Moments later, Deputy Simpson asked Tanayia, "who put it up there where you couldn't reach it?" Tanayia replied, "He did . . . because it's not – we don't just have it laying out." The video continued, capturing Tanayia's statements that she carried the gun on her person except when picking up the children from school, and "he puts it up there. I'm here by myself; he works Monday through Friday[.]"

The Commonwealth's next witness was Detective Dillon. He testified about meeting Jesse and Tanayia at the school on October 20 and informing them of their daughter's allegations. He recalled Jesse stating that his wife owned a gun, that the gun was in their home, and that he was a convicted felon.

Detective Dillon testified that as a detective, he did not wear a body camera but carried a digital recording device and recorded his interaction with Tanayia at the Mitchells' home on October 20. Detective Dillon explained that his

audio recording aligned with video footage from Deputy Simpson's body camera; however, the digital recorder picked up additional conversation between Tanayia and himself as they entered the house and searched for the gun in the kitchen. Given this context, the Commonwealth played the first minute or so of Detective Dillon's audio recording for the jury.

Near the beginning of the audio clip, Detective Dillon asked where the gun was located, to which Tanayia expressed uncertainty over its exact location. Seconds later, after Tanayia went to the kitchen and opened the overhead cabinet, Detective Dillon walked over to her as she struggled to reach the top shelf. The digital recorder captured the following exchange:

Tanayia: Can you see it? Is it up there?

Detective Dillon: Yeah, can I get it?

Tanayia: Yeah, I can't reach it. Y'all can take it.

Following Detective Dillon's testimony, the Commonwealth called one other officer to establish that the handgun was test fired and found to be operational.

After the Commonwealth rested its case, Jesse's defense counsel moved for a directed verdict of acquittal, arguing the Commonwealth failed to establish actual possession. Concerning Tanayia's statement on October 20 that "he" placed the gun on the top shelf, counsel argued that no one clarified who "he"

was, and law enforcement merely assumed "he" meant Jesse. Finally, counsel argued that circumstances surrounding Tanayia's statement – *e.g.*, she was pregnant, scared, and emotional – undermined its truthfulness. Counsel repeated Tanayia's testimony that she told police what she believed they wanted to hear.

The trial court denied the motion for directed verdict. Jesse did not testify nor call any defense witnesses. The trial court instructed the jury, and counsel made closing arguments. Following deliberations, the jury convicted Jesse for possession of a handgun by a convicted felon. Based upon the jury's recommendation, the trial court sentenced Jesse to five years' incarceration. This appeal followed.

## ANALYSIS

The only issue Jesse raises on appeal is the trial court's denial of his motion for a directed verdict of acquittal. In *Commonwealth v. Benham*, the Kentucky Supreme Court outlined the standard for reviewing a trial court's ruling on a motion for directed verdict:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilty, only then the defendant is entitled to a directed verdict of acquittal.

816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)). "[T]o survive a motion for a directed verdict, the Commonwealth must produce more than a mere scintilla of substantive evidence." *Jones v. Commonwealth*, 567 S.W.3d 922, 925 (Ky. App. 2019) (citing *Sawhill*, 660 S.W.2d at 5). Finally, a "[c]onviction can be premised on circumstantial evidence of such nature that, based on the whole case, it would not be clearly unreasonable for a jury to find guilt beyond a reasonable doubt." *Graves v. Commonwealth*, 17 S.W.3d 858, 862 (Ky. 2000) (citing *Howard v. Commonwealth*, 787 S.W.2d 264, 266-67 (Ky. App. 1989)).

Under KRS 527.040(1), "[a] person is guilty of possession of a firearm by a convicted felon when he possesses, manufactures, or transports a firearm when he has been convicted of a felony, as defined by the laws of the jurisdiction in which he was convicted[.]" The parties herein stipulated that Jesse was a convicted felon and that the firearm was a handgun.[3] As described above,

---

[3] KRS 527.040(2)(a) provides that "[p]ossession of a firearm by a convicted felon is a Class D felony *unless* the firearm possessed is a *handgun* in which case it is a Class C felony." (Emphasis added.) KRS 527.010(5) defines "handgun" as "any pistol or revolver originally designed to be fired by the use of a single hand, or any other firearm originally designed to be fired by the use of a single hand." The stipulation resolved for the jury that the firearm in the present case was in fact a handgun.

Jesse based his defense in part on the lack of evidence proving he actually possessed the handgun. However, possession of a handgun may be proven through either actual or constructive possession. *Deboy v. Commonwealth*, 214 S.W.3d 926, 930 (Ky. App. 2007) (citation omitted). In this case, the Commonwealth prosecuted Jesse under a theory of constructive possession.

To prove constructive possession, the Commonwealth bore the burden of establishing that Jesse had knowledge of the handgun and the power and intent to exercise control over it: "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and intention at a given time to exercise dominion and control of an object, either directly or through others." *Johnson v. Commonwealth*, 90 S.W.3d 39, 42 (Ky. 2002), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010) (quoting *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995)). In *Johnson*, the Kentucky Supreme Court found no error in the trial court's denial of a directed verdict motion in an unlawful gun possession case, observing that the seizure of a firearm from a defendant's home could establish constructive possession. *Id.* at 43 (quoting *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993)). Even though the defendant in *Johnson* presented testimony that another resident lawfully purchased, registered, and owned the guns, such "evidence [did] not necessarily negate the Commonwealth's proof." *Id.* The fact that the defendant "resided or

sometimes resided in [the] home was sufficient proof for the jury to find that [the defendant] had the power to exercise control over the firearms." *Id.* (citation omitted).

Our review of the evidence presented by the Commonwealth supports the trial court's determination that a reasonable juror could find Jesse guilty beyond a reasonable doubt of unlawfully possessing the handgun. First, Jesse's own statements to law enforcement established his knowledge of the handgun's presence in the house. The Commonwealth presented undisputed evidence that Jesse resided in the house with his wife and two children. In her trial testimony, Tanayia acknowledged telling law enforcement that Jesse put the handgun in the overhead cabinet, and given the entirety of her "he did" statements, there could be little to no ambiguity over *his* identity.

Moreover, Tanayia's recorded statements and actions on October 20 – specifically, her uncertainty of the gun's exact location, inability to reach it, and questioning whether it was on the shelf – supported the inference that she did not have exclusive access to the handgun. Her statement implying that she kept the gun for protection while Jesse worked Monday through Friday also indicated that the handgun remained in the house, not a storage unit, on a regular basis.

Finally, neither Jesse nor Tanayia mentioned Nashville, a storage unit, or a warning not to come home on October 20, 2022. The jury was free to

disregard Tanayia's testimony relaying these details over two years later as not credible and as an unpersuasive attempt to prevent her husband's conviction.

The Commonwealth produced "more than a mere scintilla of evidence" to support the charge, and the trial court "correctly determined that a reasonable juror could fairly find guilt beyond a reasonable doubt." *Benham*, 816 S.W.2d at 188.

## CONCLUSION

Having reviewed the record and the parties' arguments, we find no error in the trial court's denial of Mitchell's motion for a directed verdict of acquittal. Therefore, the judgment of the Warren Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky